UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATE OF AMERICA

-v.-

NADINE JAZMINE WADE,

Defendant.

21 Civ. 472 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

As a result of certain factual assertions made by Defendant in a declaration she submitted in support of her motion to withdraw her guilty plea (Dkt. #163), the Government now argues that Defendant has broadly waived the attorney-client privilege with respect to communications with her prior counsel, Andrew Bernstein, Esq., and, further, seeks an order from the Court requiring Mr. Bernstein to provide a sworn statement addressing Defendant's assertions (Dkt. #169 ("Government Letter")).  Defendant opposes the breadth of the waiver suggested by the Government's letter motion, and instead has submitted a proposed order limiting Mr. Bernstein's testimony to that pertaining to specific statements made by Defendant in her declaration.  (Dkt. #176 ("Defendant Letter")).  This Order resolves that dispute.

The attorney-client privilege exists to "encourage full and frank communication between attorneys and their clients." *United States* v. *Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (citations omitted).  However, the privilege may be waived "where a party places matters which would be covered by the attorney-client privilege at issue[.]" *United States* v. *Locascio*, 357 F. Supp. 2d 536, 550 (E.D.N.Y. 2004).  The Second Circuit "has recognized that

implied waiver may be found where the privilege holder 'asserts a claim that *in fairness* requires examination of protected communications.'"  *In re Grand Jury Proc.*, 219 F.3d 175, 182 (2d Cir. 2000) (emphasis in original) (quoting *Bilzerian*, 926 F.2d at 1292).  "Fairness considerations arise when the party attempts to use the privilege both as 'a shield and a sword.'"  *Id.* (citing *In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987); *Bilzerian*, 926 F.2d at 1292).

An analogous situation to that presented here, given Defendant's state of mind arguments, "is the defendant who asserts an advice-of-counsel defense and is thereby deemed to have waived his privilege with respect to the advice that he received."  *In re Kidder Peabody Secs. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996); *see also Bilzerian*, 926 F.2d at 1292; *Joy* v. *North*, 692 F.2d 880, 893-94 (2d Cir.1982); *Leviton Mfg. Co.* v. *Greenberg Traurig LLP*, No. 09 Civ. 8083 (GBD) (THK), 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010) ("[A]dvice of counsel may be placed in issue where, for example, a party's state of mind, such as his good faith belief in the lawfulness of his conduct, is relied upon in support of a claim of defense."), *objections overruled*, No. 09 Civ. 8083 (GBD) (THK), 2011 WL 2946380 (S.D.N.Y. July 14, 2011); 1 McCormick On Evid. § 93 Waiver (8th ed. 2022) ("[I]f a party interjects the 'advice of counsel' as an essential element of a claim or defense, then that party waives the privilege as to all advice received concerning the same subject matter.").  Where a defendant invokes such a defense, a court may find that the waiver reaches beyond the direct conversations that a defendant puts at issue to other privileged communications relevant to the defendant's state of mind or good-

faith reliance on counsel's advice.  *See, e.g.*, *In re Cnty. of Erie*, 546 F.3d 222, 228-29 (2d Cir. 2008) ("[T]he assertion of a good-faith defense involves an inquiry into state of mind, which typically calls forth the possibility of implied waiver of the attorney-client privilege."); *Locascio*, 357 F. Supp. 2d at 553 ("[T]his Court finds that if [defendant] were to assert a reliance on counsel defense, doing so would waive his attorney client privilege not only as to his conversations with [one lawyer], but as to his conversations with [a different lawyer] relating to the application of the FTC disclosure standards.").

Even where the privilege is waived, the scope of the waiver can be a difficult, fact-intensive question.  For example, the Court must take into account prejudice to the other party — here, the Government.  *In re Grand Jury Proc.*, 219 F.3d at 188 ("[A]s the animating principle behind waiver is fairness to the parties, if the court finds that the privilege was waived, then the waiver should be tailored to remedy the prejudice to the government."); *see also, e.g.*, *John Doe Co.* v. *United States*, 350 F.3d 299, 305 (2d Cir. 2003) ("Where the governing consideration is fairness, each case turns on its own particular facts and no one case is quite like another."), *as amended* (Nov. 25, 2003).  "In the determination of whether fairness requires the forfeiture of a privilege, courts must consider the notion of unfairness to the adversary that results when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion."  *S.E.C.* v. *Honig*, No. 18 Civ. 8175 (ER), 2021 WL 5630804, at *10 (S.D.N.Y. Nov. 30, 2021) (internal quotation marks and citations omitted).

The parties agree that Defendant has waived the attorney-client privilege as a consequence of certain statements in her declaration, but disagree as to the scope of the waiver.  (*See* Government Letter Ex. 1; Defendant Letter Ex. 1). In light of the above-discussed precedents, the Court finds that neither the Government's nor Defendant's proposal on the scope of the waiver here is satisfactory.  To review, the Government seeks a broad order declaring that Defendant has entirely "waived any privilege with prior counsel regarding their communications and discussions by disclosing certain privileged discussions and making broad assertions regarding the substance of the entirety of their attorney-client discussions." (Government Letter at 1).  In support of this contention, however, the Government relies on factually and legally distinguishable cases arising in the context of claims of ineffectiveness of counsel — a claim that Defendant does not raise.  (*Id.* at 2).  The Court agrees with Defendant's take on these cases, namely, that claims of ineffectiveness of counsel — whether explicit or implicit, *see, e.g.*, *Douglas* v. *United States*, No. 04 Cr. 1065 (CM), 2011 WL 335861, at *1 (S.D.N.Y. Jan. 28, 2011) ("As is well settled, where a habeas petitioner raises a claim of ineffective assistance of counsel, the petitioner waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer."); *United States* v. *Rose*, 891 F.3d 82, 83 (2d Cir. 2018) (finding effectiveness of counsel implicitly at issue, given claim that counsel had "coerced [defendant] into pleading guilty") — raise different fairness concerns for the Government and go beyond merely examining a defendant's state of mind.  (Defendant Letter at 5-6).  In

such instances, a broad waiver may be necessary in order to develop a full record related to counsel's advice and performance; such breadth is not required here, as Defendant principally relies on "her own inability to focus or inform her counsel of her state of mind at certain discrete times during the [attorney-client] relationship" in support of her motion to withdraw her guilty plea.  (*Id.* at 3).

That said, Defendant's proposed order is too narrow, insofar as it is limited to Mr. Bernstein delivering "limited sworn testimony ... addressing the *specific statements* between the [D]efendant and [p]rior [c]ounsel which *have been disclosed by the [D]efendant*[.]"  (Defendant Letter Ex. 1 (emphases added)).  Mr. Bernstein's testimony supplementing Defendant's specific statements to the Court is certainly relevant, and Defendant has waived the attorney-client privilege as to these statements, as she concedes.  However, caselaw illustrates that where a defendant has put certain otherwise privileged conversations at issue, the defendant also waives attorney-client privilege as to communications necessary to place those statements in context.  After all, the context surrounding Defendant's statements and Mr. Bernstein's recollection of Defendant's overall demeanor are put directly at issue by Defendant's declaration.  (*See, e.g.*, Dkt. #163 at ¶¶ 4 ("Shortly after hearing his advice, I informed Mr. Bernstein that I would plead guilty.  I was not happy about that course[.]"), 10 (recounting conversation with Mr. Bernstein regarding statement Mr. Bernstein prepared for Defendant), 11 (same, and further recounting Defendant's reaction to the statement), 12 ("I recall [Mr. Bernstein] saying ...

that if he was my family member, he would grab me by the neck and make me plead guilty."), 13 ("While I had expressed to my attorney as early as January an intention to plead guilty, it was not until late May that many of the terms and requirements of the guilty plea became known to me.... I was afraid to assert myself, and decided to go along with what others told me to do."), 15 ("I was in the dark as to the meaning of what I said to establish my guilt[.]"), 17 ("I never told Andrew Bernstein that the banking transaction I did for my husband were intended to conceal the source of the funds my husband stole.")). These statements suggest broader fissures in the attorney-client relationship occasioned by Defendant's purported misunderstanding of the facts required to prove the charges against her, her troubled state of mind at and leading up to the time that she entered her guilty plea, and her alleged inability to knowingly and voluntarily plead guilty to the charges against her. *See, e.g.*, *Honig*, 2021 WL 5630804, at *15 (finding that scope of waiver includes privileged communications between defendant and corporation's counsel, but not communications between a different defendant and his counsel, because "such communications do not place in issue [defendant's] state of mind, and therefore cannot demonstrate the falsity of his claim of good faith belief").

Accordingly, Mr. Bernstein is **ORDERED** to give limited sworn testimony in the form of an affidavit addressing the statements and representations Defendant made in her declaration. This testimony is not limited to the specific statements recalled by Defendant in her declaration, but also includes the necessary context surrounding such statements, including other pertinent

conversations related to those Defendant discloses, counsel's observations of Defendant's demeanor during these conversations, and other relevant information pertaining to Defendant's state of mind during these conversations as it relates to her decision to enter into a guilty plea.  Mr. Bernstein shall not, however, disclose other privileged communications related to case strategy or facts pertaining to the charged conduct that Defendant discussed with Mr. Bernstein.  Mr. Bernstein may discuss the information he provides in his affidavit with the Government.

Mr. Bernstein is **ORDERED** to submit his declaration on or before **December 9, 2022**.  The remaining briefing schedule for Defendant's motion to withdraw her guilty plea is likewise adjusted, with the Government's response now due on **December 16, 2022**, and Defendant's reply now due on **December 23, 2022**.  The motion hearing scheduled to take place on December 19, 2022, is hereby **ADJOURNED to January 25, 2023, at 10:00 a.m.**

The Clerk of Court is directed to terminate the pending motions at docket entries 169 and 176.

SO ORDERED.

Dated:   November 16, 2022
         New York, New York

_____
    KATHERINE POLK FAILLA
    United States District Judge