UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x
                                    :

UNITED STATES OF AMERICA      :

             - *v.* -           :                21 Cr. 472 (KPF)

                                    :

NADINE JAZMINE WADE,       :

                   Defendant.    :

                                    :
-----------------------------------------------------x

## THE GOVERNMENT'S MOTIONS *IN LIMINE*

 

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

Micah F. Fergenson
Matthew J. King
Dina McLeod
Assistant United States Attorneys

- Of Counsel -

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 1

ARGUMENT ....................................................................................................................... 3

I.    The Court Should Admit Statements of Wade's Co-Conspirators Against Wade As Direct Evidence of the Charged Conspiracies ............................................................................. 3

II.    The Court Should Admit Communications Between Victims of the Romance Fraud Scheme and the Alias ................................................................................................... 8

III.    The Court Should Admit Evidence of Wade's 2017 to 2020 Federal Tax Returns, Including Her Failure to File a Federal Tax Return in 2021, as Direct Evidence of the Charged Offenses or, In The Alternative, Under Federal Rule of Evidence 404(b) ....................... 10

IV.    The Court Should Preclude Evidence and Argument Concerning the Potential Punishment or Consequences of Conviction ......................................................................... 19

V.    The Court Should Preclude Evidence or Argument Concerning Wade's Prior Commission of "Good Acts" or Non-Commission of Other Bad Acts ................................................ 20

VI.    The Court Should Preclude Evidence and Argument That Would Invite Nullification .... 21

CONCLUSION .................................................................................................................... 22

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in support of its motion for certain rulings in advance of the trial of defendant Nadine Jazmine Wade scheduled for December 4, 2023.  The Government moves *in limine* to: (i) admit statements of Wade's co-conspirators against Wade as direct evidence of the charged conspiracies; (ii) admit communications between the victims of the underlying romance fraud scheme and the perpetrators of that scheme; (iii) admit evidence of Wade's 2017 to 2020 federal tax returns, as well as her failure to file a federal tax return in 2021, as direct evidence of the charged offenses or, in the alternative, under Federal Rule of Evidence 404(b); (iv) preclude evidence and argument concerning the potential punishment or consequences that Wade faces if convicted; (v) preclude evidence or argument concerning Wade's prior commission of "good acts" or non-commission of other bad acts; and (vi) preclude evidence and argument that would invite nullification.

## BACKGROUND

On July 26, 2021, a grand jury sitting in this District returned an indictment (the "Indictment") charging Wade and five others with participating from at least 2018 up to and including 2021 in a systematic scheme to launder several million dollars of fraud proceeds from victims who fell prey to malicious online romance scams (the "Romance Fraud Scheme"). Specifically, the Indictment charged Wade and her co-conspirators with money laundering conspiracy, in violation of 18 U.S.C. § 1956(h), and bank fraud conspiracy, in violation of 18 U.S.C. § 1349.[1]

---

[1] The Government expects to file a superseding indictment on November 8, 2023, which would add two counts: one count of substantive concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and one count of substantive bank fraud, in violation of 18 U.S.C. § 1344.  In other words, the new counts will simply be substantive versions of the already-charged conspiracies, and these new counts will not change the presentation of evidence at

As generally set forth in the Complaint (*see* Dkt. 1), other uncharged co-conspirators of Wade and her co-defendants (the "Scammers") used aliases including the names "Diego Francisco" and "Richard Francisco" (either, the "Alias") to meet victims—typically elderly women—on various dating websites. The Scammers used online photographs of a male model when providing victims with photos of the Alias. After engaging in romantic conversation with the victims via phone, text, and email, the Scammers, posing as the Alias, asked victims for money. The reason why the Alias needed money varied. In one version of the Scheme, the Alias was supposedly an architect who had traveled to Dubai and needed funds to receive several million dollars in payment. In another version of the Scheme, the Alias supposedly worked on an oil rig and needed funds to repair the rig.

The Alias would then instruct the victims to transfer funds to bank accounts controlled by Wade and her co-conspirators. The means of transfer also varied. In some cases, for example, the Alias instructed victims to obtain cashier's checks or money orders made payable to a particular shell company and then either mail the check to Wade or her co-conspirators or to deposit the cashier's check directly into a bank account held in the name of a certain shell company belonging to Wade or her co-conspirators. The Alias would instruct the victims to send him photographs of any cashier's checks and FedEx labels used by the victims.

For their part, Wade and her co-conspirators created their own shell companies and opened bank accounts in the name of those shell companies (the "Shell Company Accounts") at several different banks. The Shell Company Accounts received funds from victims of the Romance Fraud Scheme and rapidly depleted those funds through cash withdrawals, cashier's checks, and the purchase of vehicles, among other means. The Shell Company Accounts received over $4.5

---

trial. The Government intends, however, to submit revised requests to charge to account for these new counts.

million between in or about 2018 and 2021, over $3.5 million of which came from victims of the Romance Fraud Scheme.

Wade controlled a shell company named Royal Treasure Chest LLC. While opening accounts in the name of Royal Treasure Chest LLC, Wade represented to various banks that the company sold clothes or other accessories.  In reality, Wade's company was used as a shell company to launder proceeds from the Romance Fraud Scheme, and to make payments to herself, among others.  Indeed, the bank accounts that Wade opened and controlled in the name of her shell company received over $1 million of funds from victims of the Romance Fraud Scheme.  Wade also used her own personal bank accounts to launder funds from victims of the Romance Fraud Scheme. The victim funds included checks made out to Wade or Wade's shell company, which were mailed by victims to "Nadine J. Wade" at an address in the Bronx.  Many victim checks— each one typically for tens of thousands of dollars—included reference lines related to the Romance Fraud Scheme (and which plainly had no relation to any supposed clothing or accessories business) such as "INFILTRATION SYSTEM," "POWER SUPPLY/CABIN CONTROLS," "Richard Francisco," and "Richard B. Francisco."   Bank surveillance video shows Wade personally, and repeatedly, depositing such checks, purchasing cashier's checks, and withdrawing cash.

## **ARGUMENT**

### I.    The Court Should Admit Statements of Wade's Co-Conspirators Against Wade As Direct Evidence of the Charged Conspiracies

The Government moves *in limine* to admit under Rule 801(d)(2)(E) various co-conspirator statements made in furtherance of the conspiracies charged in the Indictment.  Because of the duration of the scheme, this motion does not attempt to itemize every such co-conspirator statement that the Government plans to offer at trial, but rather sets forth the general categories of

statements that the Government submits are admissible under Rule 801(d)(2)(E). As set forth below, these statements are admissible only *against* Wade, and cannot be offered by Wade herself. *See* Fed. R. Evid. 801(d)(2).

### A.    Background

As discussed above, the conspiracies charged in Counts One and Two of the Indictment existed from at least in or about 2018 until at least in or about 2021 and involved Wade and at least five others participating in a systematic scheme to launder several million dollars of fraud proceeds from victims of the Romance Fraud Scheme. During the conspiracy, Wade and her co-conspirators met and communicated with each other and with non-conspirators, like bank employees, in furtherance of the money laundering and bank fraud conspiracies charged in the Indictment. Those communications include the following general categories of statements, among others: (i) statements about the creation, maintenance, and use of shell companies such as Royal Treasure Chest LLC; (ii) statements about the creation, maintenance, use, and closure of bank accounts opened in the names of Wade and her co-conspirators and their respective shell companies; (iii) statements about the acquisition, delivery, and receipt of funds from victims of the Romance Fraud Scheme; (iv) statements about depositing, withdrawing, transferring, and spending funds received into the bank accounts created by Wade and her co-conspirators, including the use of wire transfers, cashier's checks, cash deposits and withdrawals, peer-to-peer payment platforms like CashApp, Venmo, or Zelle, and car auctions; (v) statements about the personal use of victim funds; and (vi) statements about how to disguise or conceal the existence of victim funds received by Wade and her co-conspirators, and how to report those proceeds (or not) on income tax returns.

For example, Wade frequently communicated with co-defendant and co-conspirator Abuchi Felix in furtherance of the money laundering and bank fraud conspiracies charged in the

Indictment. Wade and Felix communicated about creating her shell company—Royal Treasure Chest LLC—and opening bank accounts in the name of her shell company. On many occasions, Wade and Felix also communicated when she received payments from victims of the Scheme into her personal or shell company bank accounts, which were often typically for tens of thousands of dollars. Wade and Felix also frequently discussed when and how Wade should transfer portions of that money. Many times, Felix and Wade discussed Wade transferring funds to Felix or other co-conspirators by bank transfers, cashier's checks, payments or peer-to-peer money transfer applications or cash. Wade and Felix also frequently discussed how much of the victim funds Wade herself would get to keep and use as well as how she used them. Wade also interacted with other co-conspirators, including by delivering victim funds to those co-conspirators in the form of cash or cashier's checks. On some of those occasions, Felix communicated with those other co-conspirators concerning Wade traveling to meet with them.

**B.    Applicable Law**

A statement is "not hearsay if ... [it] is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). To admit a statement pursuant to this rule, a district court must find two facts by a preponderance of the evidence: first, that a conspiracy that included the defendant and the declarant existed; and second, that the statement was made during the course and in furtherance of that conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Gigante*, 166 F.3d 75,82 (2d Cir. 1999).

When determining whether the predicate conspiracy has been established, the district court is not bound by the rules of evidence, *see* Fed. R. Evid. 104(a), and "may consider the hearsay statement itself" as evidence of "the existence of a conspiracy," *United States v. Padilla*, 203 F.3d

156, 161 (2d Cir. 2000) (citing *Bourjaily*, 483 U.S. at 181). It is not necessary that the declarant be formally charged as a co-defendant, nor even that the indictment charge a conspiracy. *See United States v. Cambindo Valencia*, 609 F.2d 603 (2d Cir. 1979). "Though the Rule requires that both the declarant and the party against whom the statement is offered be members of the conspiracy, . . . there is no requirement that the person to whom the statement is made also be a member." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1171, 1199 (2d Cir. 1989); *see also United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994) (admissible co-conspirator statements can include "communicating with a person who is not a member of the conspiracy in a way that is designed to help the coconspirators to achieve the conspiracy's goals").

To be in furtherance of a conspiracy, the statement must have been designed in some way "to promote or facilitate achievement of the goals of that conspiracy." *Rivera*, 22 F.3d at 436. Under this standard, a co-conspirator statement is admissible if it "reasonably [can] be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy." *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988). Thus, statements are in furtherance of the conspiracy if they: (1) inform or provide an update as to the status or progress of the conspiracy, *see United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001); (2) "prompt the listener . . . to respond in a way that promotes or facilitates the carrying out of a criminal activity," *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990); (3) "seek to induce a co-conspirator's assistance," *Desena*, 260 F.3d at 158 (internal quotations omitted); (4) "provide reassurance," *id.*; (5) "serve to foster trust and cohesiveness," *id*; *United States v. Simmons*, 923 F.2d 934, 945 (2d Cir. 1991); (6) "facilitate and protect" the conspiratorial activities, *United States v. Diaz*, 176 F.3d 52, 87 (2d Cir. 1999); or (7) inform a co-conspirator of "the identity and activities of his coconspirators," *United States v.*

*Rastelli*, 870 F.2d 822, 837 (2d Cir. 1989); *United States v. Rahme*, 813 F.2d 31, 36 (2d Cir. 1987). A narrative description of a past event is also admissible as long as it serves "some current purpose in the conspiracy." *United States v. Thai*, 29 F.3d at 813; *see also Desena*, 260 F.3d at 159; *Maldonado-Rivera*, 922 F.2d at 958.

The evidentiary standard for proving the "in furtherance" element is a low one, which is in keeping with the more general principle that "[t]he in furtherance requirement of Rule 801(d)(2)(E) is construed broadly." *United States v. Escobar*, 50 F.3d 1414, 1423 (8th Cir. 1995).

In addition, Rule 801(d)(2)(E) provides that co-conspirator statements are admissible only if offered *against* the defendant; such statements cannot be offered by a defendant in her own defense.

## C.    Discussion

As discussed above, the evidence at trial will show that Wade worked together with her co-conspirators to launder millions of dollars received from victims of the Romance Fraud Scheme. Through witness testimony and written records, the Government will seek to admit numerous communications between Wade and her co-conspirators, between and amongst other co-conspirators, and between co-conspirators and other non-conspirators, such as bank employees. pursuant to Rule 801(d)(2)(E). Some of the communications will refer or relate specifically to Wade and her role in the money laundering and bank fraud conspiracies charged in the Indictment. Others will relate to the broader goal of the charged conspiracies, including concealing and disguising the nature, location, source, ownership or control of the victim funds, and the role of and actions taken by other co-conspirators in furtherance of those conspiracies. The non-exhaustive list of co-conspirator statements the Government intends to offer, which was described above, relate to the means and methods used by Wade and her-conspirators to achieve the goals of

the money laundering and bank fraud conspiracies and were made in furtherance of those conspiracies. Accordingly, statements like those outlined above are admissible against Wade.

## II.    The Court Should Admit Communications Between Victims of the Romance Fraud Scheme and the Alias

In addition to statements of Wade and her co-conspirators in furtherance of the money laundering and bank fraud conspiracies, the Court should also admit communications between the victims of the Romance Fraud Scheme and the Alias. These conversations occurred at least in part over text message and email; to engage in those communications, the Alias used a series of Gmail accounts whose contents were seized by the Government pursuant a search warrant. The conversations reflect the lies that the Alias told to the victims—about, for example, being trapped on an oil rig and needing money, purportedly, for replacement parts—and the instructions from the Alias about where and how the victims should send their money to Wade and her co-conspirators. These statements, which the Government intends to offer through the testimony of victims and written records, are admissible as direct evidence of the specified unlawful activity charged in the Indictment (namely, mail fraud and wire fraud), and of how the proceeds of that unlawful activity were sent to Wade and her co-conspirators, where it was further laundered.

To start, the Alias's statements are not barred by the rules against hearsay because they are not being offered for their truth. For one, these statements are offered for their falsity rather than their truth. *See* Fed. R. Evid. 801(c)(1), (2) (defining hearsay as an out-of-court statement "offer[ed] ... to prove the truth of the matter asserted in the statement"); *SEC v. AT&T, Inc.*, 626 F. Supp. 3d 703, 737 (S.D.N.Y. 2022) ("First, the SEC contends that certain statements attributed to analysts were false. These statements—independent of being by a party opponent—may separately qualify as non-hearsay insofar as, to be hearsay, a statement, must be offered for the truth of the matter asserted."); *Oteng-Amoako v. HSBC Bank USA*, No. 13 Civ. 5760 (PAC) (FM),

2014 WL 7476239, at *8 (S.D.N.Y. Dec. 30, 2014), *report and recommendation adopted*, 2015 WL 2399847 (S.D.N.Y. May 19, 2015) ("The alleged retaliatory statement by the HSBC representative is not offered for the truth; indeed, it is offered for its falsity. Accordingly, that statement is not hearsay."); *Patel v. Jani*, No. 12 Civ. 9376 (KBF), 2015 WL 5508304, at *3 (S.D.N.Y. Sept. 18, 2015) (statements "may be admissible as nonhearsay, if they are sought to be offered not for the truth of the matter, but as statements of *untruth*" (emphasis in original)).

The statements of victims and the Alias are also offered for their effect—the victims sending their money to Wade and her co-conspirators—rather than their truth. *United States v. Gotti*, 457 F. Supp. 2d 395, 397 (S.D.N.Y. 2006) ("[i]t is well established . . . that statements offered for their effect on the listener are non-hearsay."). To the extent that certain of the communications between the victims and the Alias were questions or commands, those communications contain no assertion of truth and are not hearsay. *See, e.g.*, *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) (order consisting "primarily of imperative statements" was not hearsay); *United States v. Bellomo*, 176 F.3d 580, 586 (2d Cir. 1999) ("Statements offered as evidence of commands . . . , rather than for the truth of the matter asserted therein, are not hearsay.").

Moreover, the probative value of these statements is not substantially outweighed by a risk of unfair prejudice. *See* Fed. R. Evid. 403. The probative value of these conversations could not be higher. The Government is required to prove, beyond a reasonable doubt, that the funds laundered by Wade were the proceeds of mail fraud and wire fraud. The conversations at issue contain the fraudulent representations themselves—an essential element of both mail and wire fraud—and show that victims were directed to send (at times via mail) funds to Wade's bank accounts and those of her co-conspirators. The statements are thus highly probative. And there is

nothing unfair about introducing this essential evidence that establishes essential elements of the charged crimes. *See United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) ("any proof highly probative of guilt is prejudicial to the interests of that defendant. The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980))).

### III.    The Court Should Admit Evidence of Wade's 2017 to 2020 Federal Tax Returns, Including Her Failure to File a Federal Tax Return in 2021, as Direct Evidence of the Charged Offenses or, In The Alternative, Under Federal Rule of Evidence 404(b)

The Government seeks to admit Wade's federal tax returns for the years 2017 to 2020 and her failure to file a federal tax return for the year 2021 as direct evidence of the charged crimes. Furthermore, to the extent that any of this evidence constitutes "evidence of any other crime, wrong, or act," it is also admissible pursuant to Federal Rule of Evidence 404(b), to show Wade's intent, knowledge, consciousness of guilt, and absence of mistake or accident.

The evidence will establish that Wade filed individual federal tax returns for the years 2017 through 2020.[2] For each of those years, she filed, and signed, joint tax returns with co-defendant and then-husband Abuchi Felix. The evidence will also show that Wade did not file a tax return for the year 2021, which was the year she was arrested on the present charges. During those same years, from 2017 to 2021, Wade never filed any tax returns for her alleged business—Royal Treasure Chest, LLC. And, when she did file individual federal tax returns between 2017 and 2020,

---

[2] On October 4, 2021, the Government produced portions of Wade's 2017, 2018, and 2019 federal tax returns to Wade. On November 6, 2023, the Government obtained full copies of Wade's federal tax returns for 2017, 2018, 2019, and 2020 and a "certification of lack of record" establishing that Wade did not file a return for 2021. On the same day, that is, November 6, 2023, the Government produced those records to Wade and provided notice that the Government intended to offer that evidence pursuant to Rule 404(b) to show Wade's intent, knowledge, consciousness of guilt, and absence of mistake or accident.

Wade never reported the existence of—much less any income from—Royal Treasure Chest LLC. In addition, between 2017 and 2020, on the very same tax returns, Felix reported gross receipts or sales for his own business—Honcho Ways Inc.—of $19,781 in 2017, $32,019 in 2018, $24,469 in 2019, and $7,675 in 2020.[3]

Royal Treasure Chest LLC was formed in or about January 2018 and had more than five bank accounts that received approximately $1 million in deposits. Similarly, Wade's personal bank accounts received several hundred thousand dollars more in additional deposits during the same period. Notably, the Government first identified fraud proceeds entering Wade's bank accounts in 2017.

When filing under the status "married, filing jointly," as Wade did here, Wade was required to file federal income tax returns from 2017 onward if her and her then-husband Felix earned income over a certain threshold: more than $20,800 in 2017, $24,000 in 2018, $24,400 in 2019, $24,800 in 2020, and $25,100 in 2021.[4] For all but the year 2021, Wade filed individual tax returns as required. On those returns, Wade listed her employment as "hotel clerk" in 2017 and 2018 and as "house cleaner" in 2019 and 2020. She never listed herself as self-employed, as the owner of Royal Treasure Chest LLC, or as involved in any business sector in which Royal Treasure Chest LLC purportedly did business (*i.e.*, the sale of clothing or jewelry).

With respect to her business, because Royal Treasure Chest LLC was a single-member LLC, as Wade represented to financial institutions, Wade was required to use the IRS Schedule C Profit or Loss from Business (Sole Proprietorship) (Form 1040) to report income or loss from the

---

[3] In the 2017 federal tax return, Felix did not provide a name for his company.

[4] *See* IRS Publication 501 for 2016-2020, Exemptions, Standard Deduction, and Filing Information, *available at* https://www.irs.gov/forms-pubs/about-publication-501 (click "All Publication 501 Revisions"; then click "Publ 501" for years 2016 through 2020).

business.[5]  The Government expects the evidence at trial to show that, while Wade was required to report any income or loss from her business, she failed to do so every year between 2017 and 2021.  The evidence will also show that Wade *knew* she was required to file a Schedule C for Royal Treasure Chest LLC because, in 2019 and 2020, she filed a Schedule C for her house cleaning business—which she called "Cleaning Service."

The Government intends to offer Wade's tax returns, and her failure to file a tax return in 2021, as direct evidence of her participation in the charged money laundering and bank fraud conspiracies because they show that Wade's purported business—Royal Treasure Chest LLC—and the business of her co-defendant and then-husband were shell companies used by Wade and Felix to launder the proceeds of the Romance Fraud Scheme. They also show that she had criminal intent and knowledge of the crimes charged, demonstrate her consciousness of guilt, and show that her actions were not an accident or mistake.

### A.    Applicable Law

If evidence is relevant to a charged offense, it is generally admissible at trial.  Fed. R. Evid. 402.  Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401. "To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency. Relevant evidence is not confined to that which directly establishes an element of the crime."  *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997).  Even evidence of uncharged criminal activity is admissible as direct evidence "if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding

---

[5] *See* IRS Publication 3402 (Rev. June 2016), Taxation of Limited Liability Companies, *available at* https://www.irs.gov/pub/irs-prior/p3402--2016.pdf.

the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Hsu*, 669 F.3d 112, 118 (2d Cir. 2012) (citation and internal quotation marks omitted); *see also United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007).

Evidence of prior bad acts and other crimes is also admissible under Rules 404(b) if it (1) is advanced for a proper purpose; (2) is relevant to a material issue at trial; (3) has probative value that is not substantially outweighed by any unfair prejudicial effect; and (4) is admitted subject to a limiting instruction, if one is requested. *See, e.g., Huddleston v. United States*, 485 U.S. 681, 691-92 (1988); *United States v. Brand*, 467 F.3d 179, 196 (2d Cir. 2006). Permissible purposes for introducing evidence of other acts include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2); see *also United States v. Mickens*, 926 F.2d 1323, 1329 (2d Cir. 1991)(admitting evidence under Rule 404(b) to show consciousness of guilt).

The Second Circuit follows "an 'inclusionary' approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004). The Court has broad latitude in determining whether to admit evidence pursuant to Rule 404(b), and its ruling will be reviewed only for abuse of discretion. *See, e.g., United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009). Even prior bad acts that are remote in time may be admissible under Rule 404(b) if they are relevant and adequately probative to help a jury shed light on the issues before it. *See United States v. Martino,* 759 F.2d 998, 1005 (2d Cir. 1985) (admitting eleven-year-old conviction under Rule 404(b)).

The admission of extrinsic evidence concerning a defendant's prior conduct is particularly appropriate where the defendant's state of mind is at issue:

> Federal Rule of Evidence 404(b) . . . generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless the evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge. Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.

*Huddleston*, 485 U.S. at 685.  The Second Circuit repeatedly has held that "[w]here intent to commit the crime charged is clearly at issue, evidence of prior similar acts may be introduced to prove that intent."  *United States v. Caputo*, 808 F.2d 963, 968 (2d Cir. 1987).  The defendant's knowledge and intent are in issue unless the defendant has unequivocally conceded that element of the offense.  *See, e.g.*, *United States v. McCallum*, 584 F.3d 471, 475-76 (2d Cir. 2009) ("Because [the defendant's] counsel did not make a statement to the court of sufficient clarity to indicate that intent and knowledge would not be disputed, those issues remained sufficiently in dispute for the similar acts evidence to be relevant and hence admissible."); *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993) ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged.").  With respect to the timing of the Government's presentation of the proffered evidence, the Second Circuit has made clear that where it is apparent that knowledge or intent will be in dispute, "evidence of prior or similar acts may be introduced during the government's case-in-chief, 'rather than waiting until the conclusion of the defendant's case.'"  *United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992).

Any evidence offered at trial, including as direct evidence or under Rule 404(b), remains subject to Federal Rule of Evidence 403.  *See United States v. Vickers*, 708 F. App'x 732, 736 (2d Cir. 2017) ("[T]he admission of all prior act evidence is subject to Rule 403[.]").  The Court must therefore determine whether the probative value of the offered evidence is "substantially

outweighed" by a danger of "unfair prejudice" or confusion. Fed. R. Evid. 403. The Second Circuit has found admission appropriate where the offered evidence "did not involve conduct any more sensational or disturbing than the crimes with which [the defendants were] charged." *Pitre,* 960 F.2d at 1120 (quoting *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990)) (internal quotation marks omitted). Generally speaking, "any proof highly probative of guilt is prejudicial to the interests of that defendant. The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)). To the extent there is any risk of unfair prejudice from otherwise probative evidence, the Court may provide limiting instructions to remind the jury that the defendant is not on trial for any offense other than the crimes charged. *See United States v. Tussa*, 816 F.2d 58, 68 (2d Cir. 1987) (limiting instruction sufficient to mitigate prejudice to defendant).

**B.    Discussion**

Wade's 2017 to 2020 tax returns, as well as her failure to file a tax return in 2021, which were filed (or not) during the period when the criminal conduct in this case was occurring, are direct evidence of her participation in the charged money laundering and bank fraud conspiracies. First, Wade's tax returns tend to show that Wade's purported business—Royal Treasure Chest LLC—was in fact a shell company that Wade used to launder funds received from victims of the Romance Fraud Scheme and that she was aware that the funds being deposited into her accounts derived from illegal activity. Despite incorporating the business, opening bank accounts in the name of the business, and receiving approximately $1 million of deposits in the bank accounts of that business, Wade never reported the existence of her business—much less any income from it— on her tax returns. She also never identified herself as self-employed, as the owner of Royal

Treasure Chest LLC, or as involved in any business sector in which Royal Treasure Chest LLC purportedly did business. Rather, Wade identified herself as engaged in entirely different employment: a hotel clerk and a house cleaner. This evidence shows, among other things, that the funds Wade received into her Royal Treasure Chest LLC bank accounts were not the proceeds of legitimate activity and that Wade knew it, despite what she may claim at trial.

Second, this evidence tends to show that Felix's purported business, Honcho Ways Inc., was also a shell company that Felix used to launder victim funds, rather than a legitimate car business, and, again, that Wade knew that Felix's company was not legitimate. The Government expects that Wade may argue at trial that she did not know that the money she was moving through her bank accounts was from an unlawful source because she believed that it was income from a legitimate business (Felix's purported car business). Her tax returns undermine that defense. By signing each of her tax returns, Wade swore under penalty of perjury that she examined the return and any accompanying schedules and statements and that, to the best of her knowledge and belief, they are true, correct, and complete. But if she examined the returns (as she swore she did), then she would have seen that the value of sales made by Felix's business was significantly less than the amount of money that was being deposited into her own bank accounts.

Third, her failure to file any tax return for the year 2021, which she would have filed after she had been arrested on the present charges, further demonstrates that Wade was engaged in the charged conspiracies. Once she was arrested on the pending charges, Wade faced a catch-22 when it came time to file her 2021 tax returns. On the one hand, if Wade continued to file returns as she had (that is, omitting the existence for Royal Treasure Chest LLC), then she would continue to prove that she knew that Royal Treasure Chest LLC was a sham company and that the income she received into her business bank accounts was from an unlawful source. On the other hand, if she

filed a Schedule C for Royal Treasure Chest LLC and reported income for the business (for the first time ever), then she would risk additional criminal exposure for lying on her tax returns. So, Wade did the only thing she could do to avoid that double bind: she chose to not file a tax return at all for 2021. Her failure to file that return is probative of her criminal liability.

Alternatively, and for all the same reasons described above, Wade's 2017 to 2020 tax returns, including her failure to file a tax return for 2021, are probative of her criminal intent and knowledge and are, therefore, also admissible under Rule 404(b).  For example, the Government intends to argue that Wade omitted Royal Treasure Chest LLC from her tax returns and failed to file a tax return in 2021—which she knew she was required to do—because she knew that her business was a sham and she wanted to avoid reporting profits from illegal activity.  Put another way, Wade's 2017 to 2020 tax returns, and her failure to file a 2021 tax return despite having done so previously, is evidence of her consciousness of guilt.  This knowing and intentional failure by Wade to include any income for Royal Treasure Chest LLC or to file a federal income tax return for 2021, despite being required to do so, is directly related in time to her participation in the offenses charged in the Indictment, and is thus properly admissible under Rule 404(b) as evidence bearing on her state of mind.  This is particularly true for the money laundering conspiracy charge, as Wade's failure to report any income from Royal Treasure Chest LLC or to file a 2021 tax return tends to establish that she knew the funds at issue were derived from illegal activity and wanted to conceal that income.

The Second Circuit's decision in *United States v. Atuana*, 816 F. App'x 592 (2d Cir. 2020) (summary order), is persuasive.  In that case, the defendants laundered fraud proceeds from a bank account takeover scheme and an email spoofing scheme through bank accounts of shell companies. The defendants in *Atuana* claimed—as Wade is expected to do—that they had believed they were

engaging in legitimate business transactions. At trial, the district court admitted evidence that businesses controlled by the defendants failed to file taxes to show both knowledge and intent under Rule 404(b) and gave a limiting instruction to the jury that the defendants were not the subjects of a criminal tax investigation. The Second Circuit affirmed the admission of the evidence, holding that "the district court reasonably concluded that [the defendant's] failure to file any tax returns for his several companies over the course of the conspiracy was probative of whether the businesses were legitimate." 816 F. App'x at 595. In doing so, the Second Circuit rejected the defendant's arguments that "the failure to file tax returns was not probative of whether the entities were legitimate businesses" and that "this evidence was highly prejudicial because it portrayed [the defendant] to be a tax evader." *Id.* Rather, the Second Circuit held that "the evidence was not 'any more sensational or disturbing' than the charged crimes." *Id.* (quoting *Roldan-Zapata*, 916 F.2d at 804). Wade's failure to file any Schedule C for Royal Treasure Chest LLC and any tax return for 2021 should be admitted for the same reasons. *See also United States v. Romero-Lopez*, 695 F.3d 17, 24 (1st Cir. 2012) (affirming admission of failure to file tax returns under Rule 404(b) where "government's reliance on the tax returns was not designed to demonstrate [defendant's] character, but rather to establish an element of the money laundering offense—that the concealed proceeds were derived from illegal activity."); *United States v. Memoli*, No. 13 Cr. 214 (VLB), 2014 WL 5313707, at *9 (D. Conn. Oct. 16, 2014) (admitting defendant's failure to file tax returns to show consciousness of guilt that payments the defendant received were derived from criminal activity).

In addition, Wade's inclusion of Schedule C's for her other business—her "cleaning Service"—but not for Royal Treasure Chest LLC is highly probative evidence that the charged conduct was part of an intentional scheme to launder fraud proceeds, rather than the result of

mistake, lack of knowledge, or a good faith belief that the money moving through her accounts was legitimate. Wade understood the requirement to file a Schedule C for any legitimate business activity and intentionally omitted doing so for Royal Treasure Chest LLC, despite receiving approximately $1 million in deposits into her Royal Treasure Chest LLC bank accounts.

Finally, Wade's 2017 to 2020 tax returns, and her failure to file a 2021 tax return, is much less sensational and disturbing than the charged crimes which involve romance scams perpetrated against elderly victims that caused significant hardship and resulted in large amounts of money sent to Wade. *See Atuana*, 816 F. App'x at 595. Moreover, this evidence will be straightforward and offered through limited witness testimony, such that the introduction of this evidence will not complicate or lengthen the duration of the trial. Accordingly, this evidence should not be excluded under Rule 403. In sum, the defendant's failure to file federal income tax returns should be admitted as direct evidence or, alternatively, pursuant to Rule 404(b).

## IV.    The Court Should Preclude Evidence and Argument Concerning the Potential Punishment or Consequences of Conviction

The Court should preclude Wade from offering evidence or argument concerning the potential punishment or consequences that she faces if convicted. Where the jury has no role at sentencing—such as in this case—it "should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)). This is so for good reason: argument concerning punishment "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.* There is no proper basis for the defendant to put these issues before the jury in any form, and the defendant should not be permitted to offer evidence or argument inviting the jury to consider them. *See, e.g.*, *United States v. Avenatti*, No. 19 Cr. 374 (JMF) (S.D.N.Y. Jan. 13, 2022) (Tr. 9-10) ("anything

that adverts to possible punishments, including possibility of incarceration, however obliquely, is improper and will not be permitted," including, for example, a statement in opening or closing arguments that the defendant's "liberty is at stake," which would be "a not-so-thinly veiled reference to the prospect of incarceration, which is altogether improper").

## V.    The Court Should Preclude Evidence or Argument Concerning Wade's Prior Commission of "Good Acts" or Non-Commission of Other Bad Acts

To the extent that Wade may seek to present evidence or argument concerning her prior commission of "good acts" or to offer evidence of her non-criminal activities to seek to disprove her guilt of the crimes charged, the Court should preclude her from doing so.   Specific-act propensity evidence is no more admissible to refute a criminal charge than it is to establish one.

It is settled law that "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions."  *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990).  Similarly, while a defendant may offer general testimony from a character witness about her reputation for a "pertinent trait of character," or the witness's opinion of the defendant as regards that trait, *see* Fed. R. Evid. 404(a)(2)(A) & 405(a), a defendant can neither testify nor offer other proof to establish specific acts in conformity with that trait that are not an element of the offense. *See, e.g.*, *United States v. Benedetto*, 571 F.2d 1246, 1249–50 (2d Cir. 1978) (evidence of defendant's specific acts improperly admitted because "character evidence has long been admissible only in the form of reputation and not in the form of a recitation of good or bad acts"); *United States v. Rivera*, No. 13 Cr. 149, 2015 WL 1725991 (KAM), at *2 (E.D.N.Y. Apr. 15, 2015) (precluding evidence of charitable giving); *United States v. Fazio*, No. S2 11 Cr. 873, 2012 WL 1203943, at *5 (S.D.N.Y. Apr. 11, 2012) ("a defendant may not affirmatively try to prove his innocence by reference to specific instances of good conduct; character is to be proven by reputation or opinion evidence."), *aff'd*, 770 F.3d 160 (2d Cir. 2014).  Wade should accordingly

be precluded from offering evidence or argument, including in her opening statement, concerning any specific instance or instances of their prior good acts, or the lack of commission of other bad acts.

## VI. The Court Should Preclude Evidence and Argument That Would Invite Nullification

The Court should preclude Wade from offering evidence of aspects of her life that may tend to elicit the jury's sympathy, such as her family background. Such evidence should be excluded as irrelevant, confusing, and unfairly prejudicial.

Evidence and argument that makes Wade appear sympathetic for reasons unrelated to the charges at issue should also be excluded as inviting the jury to acquit a defendant even where the evidence proves her guilt beyond a reasonable doubt. Juries are not "to act based on their . . . sympathy." *United States v. Stroming*, 838 F. App'x 624, 627 (2d Cir. 2021); *see, e.g.*, *United States v. Mustaga*, 753 F. App'x 22, 37 (2d Cir. 2018) ("The district court correctly recognized that evidence of solitary confinement could be used for the improper purpose of provoking juror sympathy."). Any attempt to encourage such sympathy is therefore an attempt at nullification, which is itself plainly improper. *See, e.g.*, *Thomas*, 116 F.3d at 615 (Jury nullification is "by no means a right or something that a judge should encourage or permit if it is within his authority to prevent.").

In keeping with these principles, Wade should be precluded from offering evidence and argument concerning her family background, children, health, age, religion, or other similar personal factors, absent a showing that such factors bear on guilt. *See, e.g., United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy whom defendant had devoted his life to care for); *United States v. Battaglia*, No. S9 05 Cr. 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of [d]efendant's family and personal status" as not "relevant to the issue of

whether [d]efendant committed the crimes charged"); *United States v. St. Rose*, No. 11 Cr. 349 (SJ), 2012 WL 1107659, at *1 (E.D.N.Y. Apr. 2, 2012) (precluding evidence of the defendant's immigration status because it does "not bear on the [d]efendant's innocence or guilt"). Such evidence is irrelevant to the jury's determination of guilt and should be precluded.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Government's motions *in limine* should be granted.

Dated: New York, New York
      November 6, 2023

                              Respectfully submitted,

                              DAMIAN WILLIAMS
                              United States Attorney

By:    /s/_____
            Micah F. Fergenson
            Matthew J. King
            Dina McLeod
            Assistant United States Attorneys
            (212) 637-2190/2384/1040